# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Life Time, Inc., | Civil No. 18-1127 (DWF/DTS) |
| Plaintiff, | |
| v. | **ORDER ON PRELIMINARY INJUNCTION** |
| Glory Gains Gym LLC, Glory Gains LLC, Caleb Hock, Seth Barnett, Justin Boyce, Alyssa Henderson, Themistocles Patramanis, Autumn Sollenberger, and Corey Upton, | |
| Defendants. | |

Patrick R. Martin, Esq., and Stephanie J. Willing, Esq., Ogletree, Deakins, Nash, Smoak, & Stewart, P.C., counsel for Plaintiff.

James Killian, Esq., and Jeremy Sosna, Esq., Maslon LLP; and Amy Abdo, Esq., Fennemore Craig, P.C., counsel for Defendants Seth Barnett, Justin Boyce, Alyssa Henderson, Themistocles Patramanis, Autumn Sollenberger, and Corey Upton.

Augustine Jimenez, Esq., counsel for Defendants Glory Gains Gym LLC, Glory Gains LLC, and Caleb Hock.

## INTRODUCTION

The Motion for Temporary Restraining Order and/or Preliminary Injunction brought by Plaintiff Life Time, Inc. ("Life Time") came on for hearing before the undersigned on May 30, 2018. On April 25, 2018, Life Time filed its Complaint (Doc. No. 1), alleging breach of contract and tortious interference with contractual relations. On May 15, 2018, Life Time filed a Motion for Temporary Restraining Order and/or

Preliminary Injunction (the "Motion") (Doc. No. 16).  On May 29, 2018, Defendants Barnett, Boyce, Henderson, Patramanis, Sollenberger, and Upton (the "Individual Personal Trainers") filed their response in opposition to the Motion.  (Doc. No. 37.)  Also on May 29, 2018, Counsel for Defendants Glory Gains Gym LLC, Glory Gains LLC, and Hock informed the Court that Glory Gains and Hock would not appear at the hearing on the Motion.

Because Life Time seeks injunctive relief extending through a permanent-injunction hearing, the Court will consider the Motion as a request for a preliminary injunction rather than a temporary restraining order.

## BACKGROUND

Each of the Individual Personal Trainers and Hock worked at Life Time's North Scottsdale Club in Scottsdale, Arizona, and each signed an identical non-compete and non-solicitation agreement protecting Life Time (the "Agreement").  (Doc. No. 23 (Pollock Decl.) ¶ 12, Exs. A, B, C, D, E, F, & G.)  The parties agreed that Minnesota law would govern the contract and provided for venue in the state and federal courts of Minnesota.  (Pollock Decl., Exs. A, B, C, D, E, F, & G at 5.)  The Agreement defined the "Covered Geographic Area for the Agreement" as the area within a five-mile radius from Life Time, and it defines a "Competing Business" as organizations other than Life Time "engaged in the business of providing fitness club-related services."  (*Id.*)

The Agreement also states:

> I agree that during the term of my employment with [Life Time] and for a period of nine (9) months after my

2

> termination at [Life Time], I will not, directly or indirectly, on behalf of myself or any other person or entity:
>
> a. be employed by or serve as an independent contractor or consultant to any Competing Business within the Covered Geographic Area; or
> b. advertise, market, sell, take orders for, or provide Personal training-related services for any Competing Business in the Covered Geographic Area.

(*Id.* at 4.) The Individual Personal Defendants also agreed to not "call upon [Life Time's] members . . . for the purpose of soliciting and/or providing personal training-related services" or "induce customers, members, employees and/or clients to patronize any Competing Business offering or intending to offer personal training" for a period of 12 months following their termination. (*Id.* at 3.)

On March 13, 2014, Hock quit his job at Life Time and eventually opened Glory Gains Gym, which is located 3.01 miles from Life Time's North Scottsdale Club. (Doc. No. 24 (Martin Decl.) ¶¶ 2-5, Exs. A, B, & C.) Hock is the sole manager of Defendants Glory Gains Gym LLC, and Glory Gains LLC. (*Id.*) Between November 2017 and March 2018, all of the Individual Personal Trainers quit their jobs at Life Time. (Pollock Decl., ¶ 15.) Each Individual Personal Trainer now offers personal training-related services at Glory Gains. (Doc. No. 20 (Mollica Decl.) ¶ 6.)

On April 25, 2018, Life Time filed its Complaint alleging breach of contract against the Individual Personal Trainers and tortious interference with contractual relations against Hock and Glory Gains. On May 15, 2018, Life Time filed the instant Motion requesting a temporary restraining order or preliminary injunction. On May 29, 2018, the Individual Personal Trainers filed their response in opposition to the Motion.

3

**ANALYSIS**

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of temporary restraining orders and preliminary injunctions. Because Defendants have had an opportunity to respond and because Life Time seeks injunctive relief extending through a permanent-injunction hearing, the Court will consider the Motion as one requesting a preliminary injunction under Rule 65(b) rather than a temporary restraining order under Rule 65(a).

**I.     Legal Standard**

The Court considers four primary factors in determining whether to grant a preliminary injunction under Rule 65(b):  (1) the threat of irreparable harm to the moving party; (2) the likelihood of the moving party's success on the merits; (3) the state of balance between the alleged irreparable harm and the harm that granting the injunction would inflict on the other party; and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).  The Court considers each factor, and no single factor is determinative of the inquiry.  *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998).

**II.    The *Dataphase* Factors**

   **a.     Threat of Irreparable Harm**

Life Time alleges that Defendants are causing Life Time irreparable harm by taking Life Time members, employees, and confidential information to Glory Gains. Courts infer irreparable harm from an employee's breach of a restrictive covenant in an

4

employment agreement. *IKON Office Solutions, Inc. v. Dale*, 170 F. Supp. 2d 892, 898 (D. Minn. 2001); *Thermorama, Inc. v. Buckwold*, 125 N.W.2d 844, 845 (Minn. 1964). The Court finds that Life Time is suffering irreparable harm because the Individual Personal Trainers are breaching the restrictive covenants of their Life Time employment agreements by providing personal training services at Glory Gains.

The Individual Personal Trainers contend that Life Time has an adequate remedy at law—i.e. monetary damages—for any harm it may suffer. The Court disagrees. Life Time's reputation and client relationships may be damaged by its perceived inability to protect its trade secrets and confidential information. The Court therefore finds that this factor weighs in favor of granting an injunction.

### b. Life Time's Likelihood of Success on the Merits

Life Time has brought breach-of-contract claims against the Individual Personal Trainers and tortious-interference claims against Glory Gains and Hock. The Court finds that Life Time is likely to prevail on these claims.

First, Life Time is likely to prevail on its breach-of-contract claims. Courts enforce non-compete agreements when they are reasonable and supported by consideration. *Boston Sci. Corp. v. Duberg*, 754 F. Supp. 2d 1033, 1039 (D. Minn. 2010). The Court finds that the Individual Personal Trainers' non-compete agreements were supported by adequate consideration. Defendants Boyce, Henderson, Patramanis, and Upton each signed their agreements at the "inception of employment" as Life Time personal trainers. *See Overholt Crop Ins. Serv. Co. v. Bredeson,* 437 N.W.2d 698, 702 (Minn. Ct. App. 1989) (explaining that "no independent consideration is necessary" to

5

support a non-compete agreement when entered into at inception of employment). Defendants Barnett and Sollenberger did not sign their agreements until after their first training days, for which each was paid.  (Pollock Decl., ¶¶ 14-15; Doc. No. 37-1, Ex. C (Barnett Decl.) ¶ 4; Doc. No. 37-1, Ex. E (Sollenberger Decl.) ¶ 3.)  The parties dispute whether Barnett and Sollenberger were told, or should have known, that Life Time's offers of employment were contingent on each signing a non-compete agreement.  Life Time claims that it informed Barnett and Sollenberger during their interviews that their offers of employment were contingent on signing a non-compete agreement.  (Doc. No. 19 (Andryakov Decl.) ¶ 6.)  Both personal trainers also signed their respective agreements after their onboarding training, but before their first shifts as personal trainers at Life Time.  (Pollock Decl., ¶¶ 13-14.)  At this stage, it seems likely that Life Time will ultimately prevail on this issue.

     The Court also finds that agreement is reasonable.  To determine the reasonableness of a non-compete agreement, courts consider:  (1) whether the restraint is necessary for the protection for the business or goodwill of the employer, (2) whether the restraint is greater than necessary to adequately protect the employer's legitimate interests, (3) the length of the restriction, and (4) the geographic scope of the restriction.  *Prow v. Medtronic, Inc.*, 770 F.2d 117, 120 (8th Cir. 1985) (interpreting Minnesota law).  Here, the restraint is necessary to protect Life Time's "goodwill, trade secrets, and confidential information."  *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 456 (Minn. Ct. App. 2001); *see also Roth v. Gamble-Skogmo, Inc.*, 532 F. Supp. 1029, 1031 (D. Minn. 1982) (listing goodwill, trade secrets, and confidential information as

legitimate interests that may be protected by a non-compete agreement).  This Court has previously concluded that Life Time's non-compete is also reasonable in its geographic scope and length of time.  *Life Time Fitness, Inc. v. DeCelles*, 854 F. Supp. 2d 690, 696 (D. Minn. 2012) (concluding that Life Time's non-compete's five-mile radius and one-year term are reasonable restrictions); *see also Boston Sci. Corp.*, 754 F. Supp. 2d at 1039 (noting that one-year terms are "consistently found" to be reasonable).

Second, Life Time is likely to prevail on its tortious-interference claims.  In considering a tortious-interference claim, a court considers whether (1) a contract existed, (2) the alleged tortfeasor knew of the contract, (3) the alleged tortfeasor intentionally brought about its breach, (4) the alleged tortfeasor's actions were not justified, and (5) damages resulted.  *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994).

Here, Hock and Glory Gains knew of the non-compete agreement because Hock signed the same agreement as part of his previous employment at Life Time.  Life Time plausibly alleges that Glory Gains and Hock recruited the Individual Personal Trainers to work at Glory Gains causing them to violate their non-compete agreements with Life Time.  (Compl. ¶ 99.)  Life Time further alleges that as a result of the breach, it is suffering monetary damages of $42,000 in monthly revenue as well as harm to its reputation and goodwill.  (*Id.* at 20; Doc. No. 18 at 22.)  There is nothing in the record that suggests Glory Gains and Hock were justified in their actions.

Based on the foregoing, the Court concludes that Life Time is likely to succeed in its claims.  This factor therefore weighs in favor of granting an injunction.

### c.     Balance of Harms

If the Court grants the preliminary injunction, the Individual Personal Trainers will be required to stop providing personal training services within five miles of Life Time's North Scottsdale Club, and Glory Gains and Hock will be precluded from hiring any other individuals who were recently employed by Life Time as personal trainers.  The Individual Personal Trainers will not be precluded from offering personal training services at a location more than five miles from Life Time's North Scottsdale Club.  Glory Gains and Hock will be able to continue offering personal training services.  If the Court denies the preliminary injunction, Life Time will continue to suffer loss of revenue, loss of members, and irreparable harm to its goodwill and reputation.  Based on the foregoing, the Court finds that the balance of harms weighs in favor of granting the injunction.

### d.     Public Interest

Public interest supports both sides.  On the one hand, public interest favors unrestrained competition.  *See Life Time Fitness, Inc. v. DeCelles*, No. 12-420, 2012 WL 639453, at *4 (D. Minn. Feb. 28, 2012).  On the other hand, public interest also supports upholding contracts.  *Id.*  Here, Life Time's personal-trainer employment agreements restrain competition, but Defendants are breaching and interfering with those agreements.  The Court finds that the public interest is equally balanced between both sides.

Based on the foregoing, and all the pleadings, files, and records herein, the Court, being fully advised in this matter, determines that Life Time has met all of the factors for issuing a preliminary injunction in this case.

**IT IS HEREBY ORDERED** that:

1. Life Time's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. No. [16]) is hereby **GRANTED** in its entirety.

2. Defendants Seth Barnett, Justin Boyce, Alyssa Henderson, Themistocles Patramanis, Autumn Sollenberger, and Corey Upton are preliminarily enjoined from continuing to breach their Agreements. This injunction includes prohibiting these Defendants from: (a) providing personal training services to former and/or current Life Time members with whom the Individual Personal Trainers had contact while at Life Time's North Scottsdale Club; (b) providing personal training services within five miles of Life Time's North Scottsdale Club; and (c) using confidential Life Time information.

3. Defendants Hock, Glory Gains LLC, and Glory Gains Gym LLC, are preliminarily enjoined from tortiously interfering with the Agreements of the Individual Personal Trainers listed in the previous paragraph. This injunction includes prohibiting Hock and Glory Gains from: (a) allowing any personal trainer who has an Agreement with Life Time and is still within the restrictive time period to provide any personal training services through Glory Gains within five miles of Life Time's North Scottsdale Club; (b) allowing any personal trainer who has an Agreement with Life Time and is still within the restrictive time period to provide any personal training services through Glory Gains to former and/or current Life Time members; and (c) using confidential Life Time information.

4. Defendants have one month from the effective date of this preliminary injunction to comply with the prohibitions set forth in (2) and (3) above.

5. Defendants Henderson and all other Defendants shall immediately return all documents, information, and files to Life Time taken from Life Time's North Scottsdale Club.

6. In accordance with Rule 65(c) of the Federal Rules of Civil Procedure, the preliminary injunction shall become effective upon Life Time, Inc. providing security to the Clerk of Court in the form of cash or a bond in the amount of Two Hundred Thousand Dollars ($200,000).

7. The preliminary injunction shall be effective upon the posting of the bond and shall remain in effect until a trial on the merits of this case, through a permanent injunction hearing, or until further order of this Court.

8. By Monday, June 11, 2018, the parties shall contact the Magistrate Judge to schedule a Rule 16 conference.

Dated:  June 4, 2018             s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 United States District Judge